Dowling Aaron Incorporated
Donald R. Fischbach, Bar No. 053522
dfischbach@dowlingaaron.com
Mark D. Kruthers, Bar No. 179750
mkruthers@dowlingaaron.com
8080 N. Palm Avenue, Third Floor
Fresno, CA 93711
Telephone: (559) 432-4500

Payne & Fears LLP
C. Darryl Cordero, Bar No. 126689
cdc@paynefears.com
Eric M. Kennedy, Bar No. 228393
emk@paynefears.com
801 S. Figueroa Street, Suite 1150
Los Angeles, CA 90017
Telephone: (213) 439-9911

Law Offices of Scott Z. Zimmermann
Scott Z. Zimmermann, Bar No. 78694
szimm@zkcf.com
601 S. Figueroa St., Suite 2610
Los Angeles, CA 90017
Telephone: (213) 452-6509

Attorneys for Plaintiffs R. Fellen, Inc., dba Sunnyside Convalescent Hospital, and Dakota Medical, Inc., dba Glenoaks Convalescent Hospital

**United States District Court**

**Eastern District of California, Fresno Division**

| | |
|---|---|
| R. FELLEN, INC., a California corporation, dba SUNNYSIDE CONVALESCENT HOSPITAL, and DAKOTA MEDICAL, INC., a California corporation, dba GLENOAKS CONVALESCENT HOSPITAL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REHABCARE GROUP, INC., a Delaware corporation, and CANNON & ASSOCIATES, LLC, a Delaware limited liability corporation, dba POLARIS GROUP,<br><br>Defendants. | Case No.<br><br>**Complaint for Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 and 47 C.F.R. § 64.1200); Demand for Jury Trial; Exhibits** |

Plaintiffs R. Fellen, Inc., doing business as Sunnyside Convalescent Hospital, and Dakota Medical, Inc., doing business as Glenoaks Convalescent Hospital, on behalf of themselves and all others similarly situated, sue Defendants RehabCare Group, Inc., and Cannon & Associates, LLC, and aver:

## Introduction

1. **Jurisdiction**. This Court has subject matter jurisdiction over this matter by operation of 28 U.S.C. § 1331 because this action arises under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012).

2. More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA" or the "Act"), was enacted into law. The law responded to widespread complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited advertisers from sending facsimile advertising without first obtaining express permission of the recipient. Despite the law, consumers and businesses continued to be besieged with unwanted junk faxes. In 2005 Congress responded by strengthening the law through the Junk Fax Prevention Act of 2005. *See* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005). As amended, the Act requires an advertiser to include on its faxed advertisements a clear and conspicuous notice that discloses to recipients their legal right to stop future junk faxes and explains how to exercise that right ("Opt-Out Notice Requirements").[1] Congress

[1] The Opt-Out Notice Requirements are contained in 47 U.S.C. § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), in the FCC's regulations and orders found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi), and in the FCC's 2006 order. *See* Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006). Unless otherwise noted, all statutory references are to the statute in effect since 2005.

considered these requirements essential to protect the public against junk faxes by informing fax recipients of their right and means to avoid them.

3. Plaintiffs bring this class action to recover damages for and to enjoin mass junk faxing by Defendants in direct violation of the TCPA and regulations of the Federal Communications Commission promulgated under the Act. Defendants have defied federal law on a staggering scale. Within the past four years alone, Defendants have blasted over 2.4 million transmissions of illegal junk faxes to long-term care facilities throughout the country. All of Defendants' junk faxes, transmitted in the course of an organized, systematic fax-blasting program, violate the TCPA and FCC regulations in several independent respects. For all transmissions, Defendants failed to obtain prior express invitation or permission of recipients to send the faxes. For all transmissions, Defendants failed to make mandatory disclosures to recipients in direct violation of the Opt-Out Notice Requirements.

4. **Standing and Venue**. Plaintiffs have standing to seek relief in this Court because § (b)(3) of the Act authorizes commencement of an action to obtain statutory damages in the minimum amount of $500 for each violation of the TCPA and/or FCC regulations, to obtain injunctive relief, or for both such actions. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants sent facsimile advertisements in violation of the JFPA and FCC regulations to this judicial district, including transmissions to Plaintiff Sunnyside, and because Defendants reside in this district.

5. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because they regularly conduct business within the state of California, because Defendants intentionally directed the illegal facsimile advertisements to recipients within the state of California, and because Defendants committed some of their violations of the TCPA and FCC regulations within the state of California.

**Parties**

6. **Plaintiff R. Fellen, Inc. (Sunnyside Convalescent Hospital).** Plaintiff R. Fellen, Inc. ("Sunnyside"), is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Sunnyside Convalescent Hospital within this judicial district. Plaintiff Sunnyside is, and at all times relevant hereto was, the subscriber of the telephone number, (559) 233-3368, to which Defendants sent facsimile advertisements at times identified later in this complaint.

7. **Plaintiff Dakota Medical, Inc. (Glenoaks Convalescent Hospital).** Plaintiff Dakota Medical, Inc. ("Glenoaks"), is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Glenoaks Convalescent Hospital, with its principal place of business in Glendale, California. Plaintiff Glenoaks is, and at all times relevant hereto was, the subscriber of the telephone number, (818) 247-0949, to which Defendants sent facsimile advertisements at times identified later in this complaint.

8. **Defendant RehabCare Group, Inc.** Defendant RehabCare Group, Inc. ("RehabCare"), is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of Delaware and having its principal place of business in St. Louis, Missouri. Plaintiffs are further informed and believe, and upon such information and belief aver, that at all times relevant to this action RehabCare was the registrant of the website (www.polaris-group.com) advertised and promoted in Defendants' facsimile advertisements that are the subject of this complaint.

9. **Defendant Cannon & Associates, LLC.** Defendant Cannon & Associates, LLC ("Polaris Group"), is, and at all times relevant hereto was, a limited liability corporation organized and existing under the laws of the state of Delaware, doing business

as the Polaris Group, and having its principal place of business in Tampa, Florida. At all relevant times Cannon has been an indirect subsidiary of RehabCare and has operated as a division of RehabCare. As used herein, "Defendants" refers to RehabCare and Polaris Group.

## The Federal Prohibition of Junk Faxes

10. In the early 1990s advertisers were exploiting facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance and cost on American consumers and businesses. Junk faxes tie up recipients' telephone lines and facsimile machines and by misappropriating and converting recipients' fax paper and toner, effectively forcing businesses and consumers to pay for advertising they receive. Junk faxes also disrupt business operations by requiring recipients to sort through faxes to separate legitimate faxes from junk faxes, and by tying up business equipment needed for the recipient's own purposes.

11. Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

12. The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because advertisers refused to honor requests by recipients to

stop.[2] Congress responded by strengthening the law through the JFPA. The JFPA, for the first time, required advertisers to include a clear and conspicuous notice on the first page of the advertisement that discloses to recipients that they had the legal right to stop future faxes and explains how to exercise that right.

**Defendants' Illegal Junk Fax Program**

13. Within the past four years Defendants RehabCare and Polaris Group have violated federal anti-junk fax laws on an epic scale. Defendants have launched and implemented an organized, systematic fax-blasting campaign to promote their property, goods and services to long-term care facilities throughout the country. In the course of this campaign Defendants have blasted junk faxes to promote the commercial availability and quality of fee-based "Public Seminars" and "Medicare training workshops"; Medicare and Medicaid program compliance services; Medicare billing manuals, services, and programs; health care manuals and DVDs; and human resources management programs. All faxes were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall marketing and promotional activities. All faxes promoted and invited recipients to visit Defendants' website, www.polaris-group.com, and to examine and purchase the goods and services advertised on that website. The interactive website encourages visitors to purchase additional goods and services from Defendants by electronic transaction.

14. All told, Defendants blasted over 2.4 million illegal fax transmissions of at least 2,147 advertisements at times identified in Exhibit 1. Defendants directed many of these fax advertisements to Plaintiffs at their respective facsimile telephone numbers. A

---

[2] Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

schedule of the 13 fax transmissions and copies of the advertisements Defendants sent to Plaintiff Sunnyside are attached as Exhibits 2 and 3, respectively. A schedule of the 240 fax transmissions and exemplars of advertisements Defendants sent to Plaintiff Glenoaks are attached as Exhibits 4 and 5, respectively.

15. To implement their illegal junk fax program, Defendants bought lists of fax telephone numbers of some 12,000 long-term care facilities from a third party, Billian Publishing, Inc. Defendants had no basis for believing that the health care providers whose fax telephone numbers they purchased from Billian had given prior express invitation or permission to receive their fax advertisements. After obtaining the fax telephone numbers, Defendants used them for mass fax blasts without making any attempt to obtain prior express invitation or permission from the providers to send fax advertisements, as required by the Act and by FCC regulations. Defendants did not seek from Plaintiffs, and Plaintiffs did not give, prior express invitation or permission to Defendants to send any fax advertisements.

16. Throughout the entire program, Defendants also committed wholesale violations of the Opt-Out Notice Requirements. Among other things, Defendants failed to include in all fax advertisements mandatory disclosures to recipients of their right under federal law to stop future junk faxes and how to make a valid opt-out request in the manner required by the TCPA and FCC regulations. Defendants also failed to include other disclosures required by the Opt-Out Notice Requirements and to place other disclosures in a clear and conspicuous notice in their fax advertisements, as required by those requirements.

17. Plaintiffs are informed and believe, and upon such information and belief aver, that each Defendant was actively involved in the preparation and implementation of the junk fax program. Defendant RehabCare, among other things, obtained the facsimile

telephone numbers from Billian and provided those numbers to Polaris Group for use in the program; reviewed and approved budgets and expenditures for the program; reviewed fax advertising content used in the program; provided goods and services to be advertised in the program; and authorized the use of its intellectual property by Polaris Group in the advertisements. Defendant Polaris Group, among other things, created the advertising content; obtained rights from RehabCare to advertise goods and services in the program; targeted long-term care facilities for individual campaigns; and hired and directed an outside fax broadcasting company, WestFax, Inc., to carry out Defendants' mass fax blasts. (All fax transmissions relevant to this complaint were sent through WestFax, Inc.) Both RehabCare and Polaris Group received and retained benefits from the junk fax program in the form of sales revenue and name recognition and promotion. RehabCare and Polaris Group therefore are vicariously liable for each other's acts and omissions relating to or in connection with the illegal junk fax program.

18. On October 30, 2014, the FCC, which is charged with administrative enforcement of the TCPA, issued an order in response to petitions by a number of parties, including Defendant Polaris Group. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, FCC 14-164, Order (Oct. 30, 2014) (hereafter "FCC Oct. 30, 2014, Order"). In its order, the FCC confirmed that senders of fax ads must include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders." FCC Oct. 30, 2014, Order, ¶ 1. At the same time, however, the FCC granted "retroactive waivers of our opt-out requirement to certain fax advertisement senders to provide these parties with temporary relief from any past obligation to provide the opt-out notice to such recipients required by our rules." The "waiver" pertained to 47 C.F.R. § 64.1200(a)(4)(iv), which required an opt-out disclosure on fax advertisements sent to those

with whom the sender had obtained the recipient's prior express invitation or permission to send the fax ad.[3]

19. Defendant Polaris Group was one of the petitioners to whom the FCC extended this limited waiver. The FCC's action, however, does not exempt Polaris Group from liability in this action, for at least three reasons. First, Polaris Group blasted junk faxes indiscriminately to providers' fax numbers bought from Billian, and made no attempt to obtain prior express invitation or permission from those providers. (The FCC made no finding that Polaris Group or any other petitioner had obtained prior express invitation or permission to send fax ads.) Second, the FCC did not invalidate the regulation, which remains the basis for a private action commenced under section 227(b)(3) of the Act. Third, the FCC has no Constitutional or statutory power to eliminate statutory liability of Polaris Group or any other party in a private action commenced under that section.

## Class Action Averments

20. **Statutory Reference**. This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes and would establish incompatible standards of conduct for Defendants, in the manner contemplated by rule 23(b)(1)(A); (c) Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the classes as a whole, as

[3] The FCC stressed that the waiver "is limited only to the Commission's rule 64.1200(a)(4)(iv), which requires that a fax ad "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in [section 64.1200(a)(4)(iii)] of this section. The waiver does not extend to the similar requirement to include an opt-out notice on fax ads sent pursuant to an established business relationship…." FCC Oct. 30, 2014, Order, ¶ 27 n.99 (brackets and emphasis in FCC original); *see also id.* at ¶ 2 n.2.

contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, if any, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

21. **Class Definition**. The Plaintiff Class consists of all persons and entities that were at the time subscribers of telephone numbers to which material that discusses, describes, or promotes the property, goods or services of Defendants (or either of them) was sent via facsimile transmission between July 1, 2010, and February 4, 2014, as more particularly identified in Exhibit 1 to this Complaint ("Plaintiff Class").[4]

22. **Class Size/Impracticality of Joinder**. Persons and entities in the Plaintiff Class number in the thousands and are sufficiently numerous such that joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

23. **Typicality**. The claims of Plaintiffs are typical of those held by members of each proposed class because all members of the proposed Plaintiff Class were sent faxed advertisements by Defendants in the same manner, are victims of the same violations of the Act and FCC regulations, have claims under the same Act and FCC regulations, and are entitled to the same statutory damages and injunctive relief.

---

[4] Excluded from the class are officers, directors, and employees of Defendants or any affiliated company; legal representatives, attorneys, heirs, successors, or assigns of Defendants, Defendants' officers and directors, or of any affiliated company; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families of the foregoing persons; any federal, state and/or local governments, governmental agencies including the FTC, government entities, government body and any attorneys of record in this action; and any person that has released Defendants from all claims based on the transmission of faxes during the entire class period.

24. **Adequacy of Representation**. The Plaintiff Class will be well represented by Plaintiffs and Plaintiffs' counsel. Plaintiffs Sunnyside and Glenoaks appreciate the responsibilities of a class representative and understand the nature and significance of the claims made in this case. Plaintiffs can fairly and adequately represent and protect the interests of the classes because there is no conflict between their interests and the interests of other class members. Proposed class counsel have the necessary resources, experience (including extensive experience litigating claims under the TCPA) and ability to prosecute this case on a class action basis.

25. **Common Questions of Law and Fact Are Predominant**. Questions of law and fact common to the class predominate over questions affecting only individual class members.

A. **Common Questions of Fact**. This case presents numerous questions of fact that are common to all claims held by members of each class. The case arises out of a common nucleus of facts and Defendants have engaged in the same general course of conduct vis-à-vis class members, and all class members' damages arise out of that conduct.

B. **Common Questions of Law**. This action presents numerous common questions of law, including, but not limited to:

(1) whether Defendants' faxes are advertisements within the ambit of the TCPA and FCC regulations implementing the Act;

(2) whether Defendants obtained prior express invitation or permission from recipients to send facsimile advertisements;

(3) Defendants' mode and method of obtaining the telephone

numbers to which the facsimile advertisements were sent and whether that mode and method complied with the requirements of § 227(b)(1)(C)(ii) and FCC regulations;

(4) who were the senders of the facsimile transmissions and whether RehabCare and Polaris Group are vicariously liable for each other's acts or omissions in violating the TCPA and FCC regulations;

(5) whether Defendants complied with the Opt-Out Notice Requirements of the TCPA and FCC regulations, and the legal consequences of their failure to comply with those requirements;

(6) whether the FCC Oct. 30, 2014, Order purports to eliminate statutory liability of Defendant Polaris Group in this action and, if so, whether any such action is within the FCC's Constitutional and statutory powers;

(7) what constitutes a knowing or willful violation of the TCPA within the meaning of § (b)(3);

(8) whether Defendants committed knowing and/or willful violations of the TCPA and/or FCC regulations;

(9) whether damages should be increased on account of Defendants' knowing and/or willful violations of the Act and/or FCC regulations and, if so, by what amount; and

(10) whether injunctive relief as prayed for in this Complaint should be entered.

26. **Injunctive Relief Is Appropriate**. Defendants have acted, and continue to act, on grounds that apply generally to class members, so that injunctive relief is appropriate with respect to the class as a whole.

27. **Superiority of Class Adjudication**. The action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

A. Common questions of law and fact, including those identified in paragraph 25, predominate over questions affecting only individual members.

B. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

C. Proof of the claims of Plaintiffs will also prove the claims of the proposed classes without the need for separate or individualized proceedings and the statutory damages provided by the TCPA are the same for all members of each proposed class, such that damages can be calculated with mathematical certainty.

D. Defendants have acted pursuant to common policies and practices in the same or similar manner with respect to all members of the proposed class.

E. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought.

F. Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to

the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the Act contains no provision authorizing an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendants' violations of the Act and FCC regulations would be grossly uneconomical. As a practical matter, the claims of the vast majority of the proposed class are not likely to be redressed absent certification.

G. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the costs of litigation among class members in relationship to the benefits received.

H. Class adjudication would serve to educate class members about their rights under federal law to stop unwanted junk faxes, a particularly important public purpose given Defendants' failure to disclose to recipients their right to stop future junk faxes and how to exercise that right, in violation of the TCPA and FCC regulations.

28. **Notice**. Plaintiffs contemplate that upon certification, notice will be provided to all class members that can be identified through reasonable effort. Rule 23 requires, and the notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the classes are certified under rule 23(b)(3), that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under rule 23(c)(3).

**Claim for Relief**

**(Against Defendants RehabCare and Polaris Group for Violations of the TCPA and FCC Regulations by Plaintiffs and the Plaintiff Class)**

29. Plaintiffs and the proposed Plaintiff Class reassert the averments set forth in paragraphs 1 through 28, above.

30. **Defendants' Violations of the Act and FCC Regulations**. Between July 1, 2010, and February 4, 2014, Defendants RehabCare and Polaris Group violated the TCPA and FCC regulations in the course of sending 2,439,555 transmissions of unsolicited advertisements and/or advertisements that failed to comply with the Opt-Out Notice Requirements from telephone facsimile machines, computers, or other devices to telephone facsimile machines of Plaintiffs and members of the Plaintiff Class, within the United States.

31. RehabCare and Polaris Group are each senders of all facsimile advertisements and are therefore directly liable for these violations because the advertisements were sent on their behalf and because the faxes advertised or promoted Defendants' property, goods and services. In addition, RehabCare and Polaris Group are vicariously liable for each other's acts or omissions in violating the TCPA and FCC regulations.

32. **Private Right of Action**. Under § 227(b)(3), Plaintiffs have a private right of action to bring this claim for damages and injunctive relief on behalf of themselves and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and FCC regulations.

33. **Injunctive Relief**. Plaintiffs are entitled to have preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, including the transmission of unsolicited advertisements via facsimile to any person or entity, or of advertisements that violate the Opt-Out Notice Requirements; (2) require Defendants to deliver to Plaintiffs all records of facsimile advertisements sent commencing July 1, 2010, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the faxing of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements violates the JFPA and that they should not be misled or encouraged in any way by Defendants' violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendants to place conspicuously on the homepage of their websites the warnings contained in subsection 4 of this paragraph.

34. **Damages**. Plaintiffs and members of the proposed Plaintiff Class are entitled to recover statutory damages in the minimum amount of $500 for each violation by Defendants of the TCPA and/or FCC regulations, as expressly authorized by section 227(b)(3)(B). Defendants committed their violations willfully and/or knowingly within the meaning of that section and the amount of statutory damages therefore should be increased up to three times, as authorized by the Act.

**Prayer for Relief**

WHEREFORE, Plaintiffs and the Plaintiff Class pray for judgment against Defendants RehabCare and Polaris Group, and each of them:

1. Certifying the class described in paragraph 21 of this Complaint;

2. Appointing Plaintiffs as representatives for the Plaintiff Class and granting each Plaintiff an incentive or service award for its efforts as class representative;

3. Appointing Plaintiffs' counsel as counsel for the Plaintiff Class;

4. Awarding of statutory damages in the minimum amount of $500 for each violation of the Act and/or FCC regulations by Defendants, exclusive of interest and costs, according to proof;

5. Increasing the statutory damages awarded by three times;

6. Entering the preliminary and permanent injunctions requested in paragraph 33 of this complaint;

7. Ordering payment of Plaintiffs' costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the class;

8. Awarding prejudgment interest; and

9. Awarding such other and further relief as the Court shall deem just and proper.

**Jury Demand**

Under authority of Federal Rule of Civil Procedure 38, Plaintiffs demand trial by jury on all issues triable of right by a jury.

DATED: December 22, 2014 DOWLING AARON INCORPORATED

By: /s/ Donald R. Fischbach
DONALD R. FISCHBACH
One of the Attorneys for Plaintiffs R. Fellen, Inc., dba Sunnyside Convalescent Hospital, and Dakota Medical, Inc., dba Glenoaks Convalescent Hospital

4824-9954-6140.6