UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAKOTA MEDICAL, INC., a California corporation doing business as Glenoaks Convalescent Hospital,<br><br>Plaintiff,<br><br>v.<br><br>REHABCARE GROUP, INC., a Delaware corporation, and CANNON & ASSOCIATES, LLC, a Delaware limited liability corporation doing business as Polaris Group,<br><br>Defendants. | No. 1:14-cv-02081-DAD-BAM<br><br>ORDER DENYING MOTION TO ENJOIN STATE COURT PROCEEDINGS<br><br>(Doc. No. 194) |

The motion before the court concerns the allocation of fees between attorneys who at various times represented plaintiff prior to the certification or settlement of this class action. The court issued an order finally approving class settlement in this case on September 21, 2017. (Doc. No. 189.) On November 15, 2017, class counsel Darryl Cordero, Donald R. Fischbach, and Joel Magolnick (hereinafter "class counsel") filed a motion seeking to enjoin state court proceedings brought against them by attorney Scott Zimmerman, a non-party to this suit (hereinafter "Zimmerman"). (Doc. No. 194.) Zimmerman filed an opposition to the motion to enjoin on December 5, 2017. (Doc. No. 198.) Class counsel filed a reply on December 12, 2017. (Doc. No. 200.) The court held a hearing on December 19, 2017, at which attorneys Cordero,

1

Fischbach, Daniel Lula, and Scott Luskin appeared on behalf of class counsel and plaintiff. Attorney Zimmerman appeared on behalf of himself. Attorneys Melissa Gomberg and David Jordan appeared on behalf of defendants. Having considered the submissions and arguments of the parties, the court will deny the motion to enjoin the state court proceedings.

## BACKGROUND

The underlying action here is a putative class action filed under the Telephone Consumer Protection Act ("TCPA"), alleging defendants had sent a huge number of junk faxes to various nursing homes and healthcare facilities. Following substantial litigation, the action was settled. A motion for certification of the settlement class and preliminary approval of a class settlement was filed on March 21, 2017 and the motion was granted on April 19, 2017. (Doc. Nos. 172, 177.) After distribution of the class notice and an objection period, a motion for final approval of the settlement and certification of the settlement class was filed on August 1, 2017. (Doc. No. 179.) This motion was granted by order on September 21, 2017. (Doc. No. 189.)

Of primary importance to this dispute, that order also granted class counsel's application for attorneys' fees, awarding them one-third of the common fund, which in this case amounted to $8,333,333. (*Id.* at 11–17.) Class counsel requested that the court approve the allocation of attorneys' fees amongst the three different firms who comprised class counsel, and the court did so. (*Id.* at 17.) Further, class counsel sought to have the court approve class counsels' expressed intent to voluntarily pay attorney Frank Owen, who was not class counsel, 3.33 percent of their respective shares from the settlement. (*Id.* at 18.) At the final fairness hearing, the court commented that it was unsure of the need to approve this sharing of funds, but given counsel's representations regarding the distribution of work in this case and the voluntarily nature of the agreement, the court could glean no reason to refuse counsels' request. (*Id.* at 19.)

At no point during the approval process did class counsel advise the court of a potential dispute related to attorneys' fees with another attorney who had previously represented the named plaintiff. However, following entry of judgment on October 11, 2017, class counsel moved to enjoin a state court action brought by attorney Zimmerman in which he sought to be paid for his prior work in both this and another class action matter pursuant to a state law claim of *quantum*

2

*meruit*.[1] (Doc. No. 194.) In their pending motion class counsel seek to enjoin Zimmerman's lawsuit on the basis of the All Writs Act, 28 U.S.C. § 1651(a) and the Anti-Injunction Act, 28 U.S.C. § 2283 because, they contend, doing so is necessary "in aid of" this court's jurisdiction in this class action and in order to prevent relitigation of issues already decided by this court. (*Id.* at 15–24.) Class counsel also seeks the award of sanctions against Zimmerman for filing such an action in state court. (*Id.* at 24–25.) Zimmerman, specially appearing in this matter, opposes the

---

[1] Though not strictly necessary to the resolution of the pending motion, the court will synopsize its understanding of the relationship between these various attorneys. According to Zimmerman, he was approached by attorney Cordero about co-counseling on TCPA cases in 2006, and the two started working together as co-lead counsel in a number of cases. (Doc. No. 199 at 2.) Attorneys Magolnick and Owen joined them as co-counsel in several of these actions. (*Id.* at 2.) In particular, Zimmerman and Cordero were co-lead counsel, and Magolnick and Owen were co-counsel, in another suit brought against RehabCare Group and Cannon & Associates in the U.S. District Court for the Southern District of Florida which was filed in January 2014 ("RHC I"). (*Id.*) The attorneys purportedly had an agreement to share fees from that suit. (*Id.* at 2–3.) The court in RHC I denied a class certification motion in June 2014, effectively ending that action. (*Id.* at 3.) However, records discovered during the proceedings in RHC I led attorneys Zimmerman, Cordero, Owen, and Magolnick to conclude they would have a better chance for success in a separate class action suit against these defendants than they would in further litigating RHC I. (*Id.*) Thereafter, attorneys Cordero and Zimmerman were retained by the named plaintiffs in this action as co-lead counsel. (*Id.*) Attorney Magolnick and the firm of Dowling Aaron were also retained as co-counsel. (*Id.*) This case—which Zimmerman refers to as "RHC II"—was commenced in December 2014. (*Id.* at 4.) In the spring of 2015, a dispute arose between attorneys Zimmerman and Cordero regarding the division of fees in earlier cases, culminating in an arbitration in August 2015. (*Id.*) The named plaintiffs in this action dismissed Zimmerman as one of their attorneys in March 2016, and Zimmerman filed a notice with the court to that effect that same month. (*Id.*; *see also* Doc. No. 108.) Around the same time, Zimmerman was also discharged as counsel in another case in which Cordero and he were co-counsel, *Craftwood Lumber Co. v. Senco Brands, Inc.*, filed in the U.S. District Court for the Northern District of Illinois. (Doc. No. 199 at 4–5.) Following a successful mediation in the *Senco* case, Zimmerman requested that he be included in the application to that court for fees even though he had been discharged, a request attorney Cordero accommodated. (*Id.*) Zimmerman similarly requested, initially in June 2016, that he be included in any calculation of attorneys' fees filed in connection with this action. (Doc. No. 194-2 at 8.) Class counsel apparently did not immediately respond to that request. Approximately one year later, they notified Zimmerman of the June 2017 preliminary approval of the settlement in this case. (*Id.*) Zimmerman reiterated his request to be included in attorneys' fee calculations, which class counsel refused. (*Id.* at 11.) Zimmerman responded in July 2017, again requesting to be included in the calculation of fees or, alternatively, to be paid separately for his work in both RHC I and RHC II. (*Id.* at 14–15.) Class counsel again refused, stating they would seek attorneys' fees only for class counsel in the motion they intended to present to this court. (*Id.*) Zimmerman did not file his state court action for *quantum meruit* until shortly after judgment was entered in this case.

3

motion to enjoin his pending action in state court, asserting that this court lacks jurisdiction over both him and his dispute with class counsel. (Doc. No. 198.)

**LEGAL STANDARD**

The All Writs Act states that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Supreme Court has noted that the purpose of the All Writs Act is to allow federal courts to issue commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tele. Co.*, 434 U.S. 159, 172 (1977); *see also ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108, 1117 n. 10 (9th Cir. 2000). However, the All Writs Act is not a source of jurisdiction unto itself. *United States v. Denedo*, 556 U.S. 904, 914 (2009); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32–34 (2002); *see also ARCO Environmental Remediation, L.L.C.*, 213 F.3d at 1117, n.10. Because of this, the All Writs Act only provides the power to issue writs that are "designed to preserve jurisdiction that the court has acquired from some other independent source in law." *Taiwan v. U.S. Dist. Court for the N. Dist. of Cal.*, 128 F.3d 712, 717 (9th Cir. 1997) (quoting *Jackson v. Vasquez*, 1 F.3d 885, 889 (9th Cir. 1993)); *see also United States v. Bravo-Diaz*, 312 F,3d 995, 997 (9th Cir. 2002).

While the All Writs Act may appear expansive, another federal act known as the Anti-Injunction Act, 28 U.S.C. § 2283,[2] "limits the All Writs Act by prohibiting federal courts from enjoining state court actions except in three narrow circumstances." *California v. IntelliGender, LLC*, 771 F.3d 1169, 1176 (9th Cir. 2014). Specifically, the Anti-Injunction Act permits such injunctions only where: (1) "expressly authorized" by Congress; (2) "where necessary in aid of [the court's] jurisdiction"; and (3) "to protect or effectuate its judgments."[3] 28 U.S.C. § 2283;

---

[2] Another federal statute, 26 U.S.C. § 7421, is also frequently referred to as the Anti-Injunction Act. That provision prohibits suits brought "for the purpose of restraining the assessment or collection of any tax," 26 U.S.C. § 7421(a), and is not at issue in this case.

[3] This final exception is frequently called the "relitigation" exception.

4

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). By providing only these narrow exceptions, the Anti-Injunction Act "creates a presumption in favor of permitting parallel actions in state and federal court." *Bennett v. Medtronic, Inc.* 285 F.3d 801, 806 (9th Cir. 2002); *see also Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.").

**ANALYSIS**

Class counsel argue here that two of the exceptions to the Anti-Injunction Act—the necessary in aid of jurisdiction exception and the relitigation exception—apply here, permitting this court to enjoin the state court action. It is unclear under Ninth Circuit authority whether the analysis with respect to these two exceptions is the same or different. *Compare Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1315 n.1 (9th Cir. 2010) ("The 'necessary in aid of' jurisdiction exception is similar to the 'protect or effectuate' judgments exception. Accordingly, we do not conduct separate analyses here.") (internal citations omitted), *with Sandpiper Vill. Condo. Ass'n, Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 843–53 (9th Cir. 2005) (undertaking separate analyses with respect to the two exceptions). In the interest of thoroughness, and because the parties here have addressed the exceptions separately, this court will likewise address each argument separately below.

**A.  Necessary in Aid of Jurisdiction Exception**

The first of the exceptions, the necessary in aid of jurisdiction exception, authorizes injunctive relief to prevent interference from a state court that would "seriously impair the federal court's flexibility and authority to decide that case." *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 843 (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 295). "This exception 'arose from the settled rule that if an action is *in rem*, the court first obtaining jurisdiction over the *res* may proceed without interference from actions in other courts involving the same *res*.'" *Id.* (quoting *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1272 (9th Cir. 1982)); *see also Bennett*, 285 F.3d at 807 ("[I]njunctions are permitted where an *in personam* action bears substantial similarity

5

to an *in rem* action."). While the action has been expanded to include some *in personam* actions, it does so only where a parallel state action "threatens to render the exercise of the federal court's jurisdiction nugatory." *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 843–44 (quoting *Bennett*, 285 F.3d at 806) (internal quotations omitted). Thus, a state court lawsuit may not be enjoined under necessary in aid of jurisdiction exception unless it "ousts the jurisdiction of the court in which the first suit was brought." *Id.* at 844 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 232 (1922)). For example, this exception has been held not to bar a state action seeking to raise claims based on the same facts as a previously settled class action, *id.*, or an action filed in state court alleging securities law violations similar to those pending in federal court. *See Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987). "[T]he mere fact that the actions of a state court might have some effect on the federal proceedings does not justify interference." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1101–02 (9th Cir. 2008) (noting also that this exception is most frequently applied in multi-district litigation, though not exclusively). Meanwhile, this exception has been found to allow injunctions where necessary to effectuate a settlement agreement over which the court had retained jurisdiction, to preserve the integrity of exclusive federal jurisdiction, in school desegregation cases, and in multi-district litigation. *See Bennett*, 285 F.3d at 806 (collecting cases); *see also United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1015 (9th Cir. 1999) (finding the Anti-Injunction Act did not bar an injunction when the district court retained jurisdiction to enforce dispute arising from a settlement agreement).

Here, class counsel argues that the "necessary in aid of jurisdiction" exception applies for four separate reasons: (1) the state court action "threatens to frustrate proceedings and disrupt the orderly resolution" of this case; (2) the state court action "undermines the due process rights of class members to receive notice of and object to attorneys' fees"; (3) allowing the state court action to proceed undermines the procedures set forth in Rule 23 for the awarding of attorneys' fees; and (4) the state court action unfairly penalizes named plaintiff and class representative Dakota Medical. (Doc. No. 194-1 at 15–18.)

/////

The first of these reasons cited by class counsel is unpersuasive because mere frustration and even some disruption of a federal case is insufficient to justify such an injunction: rather, for the necessary in aid of jurisdiction exception to apply the state court action must "threaten[ ] to render the exercise of the federal court's jurisdiction nugatory." *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 843–44. Unless the state court action would "seriously impair the federal court's flexibility and authority to decide" the case in front of it, the state court action should proceed. *Id.* at 843. Here, it is far from clear that a dispute between attorneys concerning their fees would damage the settlement of this action in any way. Zimmerman claims a legal right to be paid by co-counsel and the named plaintiff[4] for his work pursuant to a state law theory of *quantum meruit*. (Doc. No. 194-3 at 14–15.) Nothing about the state court action would alter or amend the total amount awarded in attorneys' fees under the settlement in this action, impact the amount paid out to the class in this case, or limit or change the scope of the settled claims here. Zimmerman's sole claim is that, under state law, class counsel and plaintiff should be required to pay him for the work he previously performed in this and another case. (Doc. No. 194-3 at 15–16.)[5] There is no indication the state court would invade the funds set aside for the class or otherwise augment the outcome of this case in order to pay Zimmerman; rather, if Zimmerman prevailed, the state court would presumably award a money judgment in his favor.

/////

---

[4] Zimmerman's naming of the plaintiff in this action as a defendant in his *quantum meruit* claim in state court appears to the undersigned to be clearly misguided. Zimmerman's dispute appears to clearly be with class counsel and, in particular, attorney Cordero with whom he apparently once worked as co-counsel in this and other cases. However, that is a matter for the state court to resolve.

[5] Zimmerman filed a notice of lien in the state court proceeding, noting that he "claim[ed] a lien on any award, judgment, or other payment of attorneys' fees to plaintiff, plaintiff's counsel, class counsel and/or Frank Owen in the RHC II Case." (Doc. No. 194-3 at 19.) Such liens are merely security interests that arise in California as a matter of law, whether or not the attorney files a notice of them. *S. Cal. Gas Co. v. Flannery*, 5 Cal. App. 5th 476, 494 (2016). In cases involving contingency fee contracts, these liens arise only when the contingency occurs, and survive the discharge of the attorney, though they are limited to *quantum meruit* recovery, rather than the full value of the contracted contingency. *Id.* Even if a security is sought based on this court's award, it is not tantamount to this court awarding Zimmerman attorneys' fees under Rule 23.

Class counsel next argue that this state lawsuit invades the due process rights of the absent class members here. Class counsel cite only the decision in *In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) for the proposition that the *division* of attorneys' fees presents a due process concern for absent class members. In that suit, a securities class action settled early on in the litigation. *Id.* at 990–91. Two objections were raised to the attorneys' fees sought by plaintiffs' counsel, generally requesting that any amount awarded be no more than 18 percent, instead of 25 percent, of the settlement amount. *Id.* at 991. Neither of the two objectors appeared at the final fairness hearing, and the district court awarded 25 percent of the fund as attorneys' fees. *Id.* at 991–92. On appeal, the Ninth Circuit held that the district court had abused its discretion specifically because it set "the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion." *Id.* at 993. In so holding, the Ninth Circuit observed that the manner in which the settlement proceedings were scheduled "borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion." *Id.* The Ninth Circuit stated that it was important to "[a]llow[ ] class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported." *Id.* at 994.

The court in *In re Mercury* did not hold that due process requires class members to be notified of how attorneys' fees are to be divided among various class counsel. Rather, in that case the Ninth Circuit held only that class members must be able to examine the propriety of the total amount of attorneys' fees sought, which they cannot do if the objection deadline is set prior to the date on which counsel must file their fee motion. *See id.* at 993. Simply put, no authority has been presented to this court demonstrating that due process requires class members to know the manner in which attorneys' fees are to be divided among counsel, so long as the overall award and payment structure is proper. *See* Fed. R. Civ. P. 23(h), advisory committee's notes to 2003 amendment ("In a class action, the district court must ensure that the *amount* and *mode of payment* of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid.") (emphasis added).

8

The third argument asserted by class counsel in support of their motion is that Federal Rule of Civil Procedure 23 requires Zimmerman's lawsuit in state court to be enjoined, because it seeks what are, in essence, attorneys' fees. (Doc. No. 194-1 at 18.) Rule 23 permits this court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement," and sets out certain procedures to be followed when doing so. *See* Fed. R. Civ. P. 23(h)(1)–(4). Attorneys' fee awards under Rule 23 are not strictly limited to class counsel. In this regard, the advisory committee notes to Rule 23 observe that, "[i]n some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class," including "attorneys who acted for the class before certification but were not appointed class counsel." Fed. R. Civ. P. 23(h), advisory committee's notes to 2003 amendment. Thus, the term "attorney's fees" as used in Rule 23 is more expansive than simply the fee to be paid to class counsel.

California *quantum meruit* actions, however, seek an award of damages based on the value of the work performed. They do not seek an award of attorneys' fees under Rule 23. A *quantum meruit* cause of action is available to discharged attorneys under California law precisely because an attorney bringing such an action *cannot* recover attorneys' fees to which they might otherwise be contractually entitled. *See Fracasse v. Brent*, 6 Cal. 3d 784, 788–91 (1972) (holding that a discharged attorney cannot recover in a contract action against a former client, and is only entitled to the values of the services rendered in *quantum meruit*); *Alfinito v. Sater*, 246 Cal. App. 2d 362, 389 (1966) (citing *Kirk v. Culley*, 202 Cal. 501 (1927)) (noting the differences between breach of contract and *quantum meruit* recoveries). Moreover, California courts have determined that there are no ethical prohibitions related to fee-splitting when a discharged attorney brings a *quantum meruit* action, further supporting the conclusion that a *quantum meruit* recovery is not an award of attorneys' fees. *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458–59 (2004) ("The question arises whether a *quantum meruit* award for services rendered in reliance on a fee-sharing agreement that lacks written client consent constitutes a division of fees within the rule's contemplation. We think not."); *Olsen v. Harbison*, 191 Cal. App. 4th 325, 330–31 (2010) ("Although an attorney who has not received this written consent cannot sue to obtain the

specified fees, the attorney may sue the client in *quantum meruit* to recover the reasonable value of the services rendered on the client's behalf."); *Maridrossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007). Finally, the measurement of attorneys' fees awarded under Rule 23 is fundamentally distinct from the measure of recovery under *quantum meruit*. In the Rule 23 context, "[f]or a percentage approach to fee measurement, results achieved is the basic starting point." Fed. R. Civ. P. 23(h), advisory committee's notes to 2003 amendment; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (noting that the results achieved is a relevant factor in awarding attorneys' fees in percentage of the fund awards). In a *quantum meruit* action, however, the starting point for assessing damages is the value of the services rendered, not the ultimate outcome of the litigation, even where an attorney has specifically contracted to be paid a percentage of the recovery. *Fracasse*, 6 Cal. 3d at 788–91. In short, the recovery to be achieved in a *quantum meruit* action is not synonymous with the award of attorneys' fees under Rule 23.

Finally, class counsel argue that the state court lawsuit "is unfair to Glenoaks [Dakota Medical] and penalizes, rather than rewards, Glenoaks' service to the class." (Doc. No. 194-1 at 18.) No authority is provided indicating why this unfairness, even if true, should weigh on the court's decision whether to enjoin Zimmerman's state court action. It is clear that the court has never been fully apprised of all the potential obligations the named plaintiff and class counsel may owe to other third-parties. This is unsurprising, however, as questions of third-party relationships tangential to a lawsuit are typically a matter of state law, separate and apart from the lawsuit itself. *See, e.g.*, *Matter of Pac. Far East Line, Inc.*, 654 F.2d 664, 668 (9th Cir. 1981) (noting California law governed the status of claims between an attorney and a client).

In summary, class counsel have failed to demonstrate that this court must enjoin the state court proceedings under the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act. Thus, the court turns to the second proffered exception to the Anti-Injunction Act.

### B. Relitigation Exception

The second exception invoked by class counsel here, the relitigation exception, "was designed to permit a federal court to prevent state litigation of an issue that previously was

presented to and decided by the federal court" and "is founded in the well-recognized concepts of *res judicata* [claim preclusion] and collateral estoppel [issue preclusion]." *Chick Kam Choo*, 486 U.S. at 147; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). This exception requires "that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court," a "prerequisite" which "is strict and narrow."[6] *Chick Kam Choo*, 486 U.S. at 148; *see also Smith*, 564 U.S. at 318 ("[C]lose cases have easy answers: The federal court should not issue an injunction, and the state court should decide the preclusion question."). Additionally, the traditional "requirements of identity of the parties, . . . adequate notice, and adequate representation apply." *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 847 (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000)). The narrowness of the relitigation exception is critical because federal courts have no power to enjoin state court proceedings "merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear." *Chick Kam Choo*, 486 U.S. at 149 (quoting *Atlantic Coast Line*, 398 U.S. at 294); *see also Smith*, 564 U.S. at 307 ("Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court.").

Here, class counsel argue that the state suit should be enjoined under the relitigation exception because Zimmerman had "more than a 'full and fair opportunity' to litigate his claim to attorneys' fees" before this court during the class action settlement proceedings, specifically

---

[6] There is a circuit split over whether the relitigation exception allows federal courts to enjoin state suits concerning any claims and issues that *could have been brought* in the prior federal litigation, or only claims that actually were litigated. However, under binding Ninth Circuit precedent the relitigation exception is not limited to "issues 'actually litigated' in a prior court proceeding." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 869–70 (9th Cir. 1992) (noting that the First, Fifth, Fourth, Sixth, and Second Circuits had all concluded the relitigation exception is narrower than claim preclusion, and therefore is limited only to issues actually litigated). The Supreme Court has not explicitly resolved this circuit split, though it recently suggested this exception is limited only to issues actually litigated. *See Smith*, 564 U.S. at 308–11 (noting again that the exception applies only to issues that "actually have been decided by the federal court," and declining to apply it where the federal and state courts would apply different law in reaching a decision). Nevertheless, this court recognizes that binding precedent compels the conclusion that the relitigation exception bars claims that were litigated *or could have been litigated*, consistent with claim preclusion principles. *See Western Sys., Inc.*, 958 F.2d at 869–70.

11

because he was provided notice of the settlement and informed that class counsel would not file a claim for attorneys' fees on his behalf. (Doc. No. 194-1 at 19–24.) According to class counsel, Zimmerman's *quantum meruit* claim represents an effort to relitigate this court's decision with respect to the award of attorneys' fees, which the court arrived at after "a thorough, painstaking analysis." (*Id.* at 21–22.)

As noted, in the Ninth Circuit the relitigation exception is co-extensive with claim preclusion principles and covers claims that could have been, but were not, litigated. Nonetheless, class counsel fall far short of establishing the applicability of that exception here. The standard elements of establishing claim preclusion are well known. The party invoking claim preclusion must show an "identity of claims," a "final judgment on the merits," and "identity or privity between the parties." *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009)). These elements are required because, as a general matter, non-parties and third-parties to litigation are not bound by a judgment in a given case. *See Smith*, 564 U.S. at 312 (noting that "another basic premise of preclusion law" is that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions"); *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 848–49 (observing that a judgment in a lawsuit resolves the issues as to the parties of the suit, "but it does not conclude the rights of strangers to those proceedings") (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). Here, class counsel have not demonstrated either that there was privity between the parties or that there is an identity of claims.

Claim preclusion principles apply only when there is either "identity or privity between parties." *Stewart v. U.S. Bancorp.*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). Class counsel has failed to explain how any parties to the class action settlement were in privity with Zimmerman, who was not a party to that suit. *See United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) ("Privity 'is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents *precisely the same right in respect to the subject matter involved*.'") (emphasis added) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (internal quotations omitted);

12

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) ("Even when the parties are not identical, privity may exist if 'there is substantial identity between parties, that is, when there is sufficient commonality of interest.'") (quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)) (internal quotations omitted). The reason for this is obvious: none of the parties to the settlement in this action represented Zimmerman's interest in the outcome of the attorneys' fees dispute at all. Some of those involved in the settlement of this action, such as class counsel, were in fact directly adversarial to Zimmerman's interests. Indeed, class counsel specifically told Zimmerman they would not include any request for attorneys' fees for him in the motion for attorneys' fees which they presented to this court. (*See* Doc. No. 194-2 at 11.)

Class counsel also fail to demonstrate that there was an identity of issues, as required to invoke claim preclusion. In this regard, the Ninth Circuit considers four factors in determining whether there is an "identity of claims":

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917–18 (9th Cir. 2012) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The last of these criteria is the most important." *Id.*; *see also Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078. Put another way, where a party is asking for relief based on the same facts that gave rise to the wrongs alleged in the first suit, the suits arise from the same "nucleus of facts" and may be barred by claim preclusion. *Turtle Island Restoration Network*, 673 F.3d at 918–19; *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078.

Here, the facts giving rise to the two suits in question are clearly vastly different. As described above, this class action case concerned alleged violations of the TCPA by defendants RehabCare Group and Cannon & Associates based on the sending of junk faxes advertising seminars and workshops on Medicare and Medicaid billing and other issues to healthcare

facilities. (*See* Doc. No. 1.) In contrast, the state action brought by Zimmerman concerns what compensation, if any, should be paid to a former attorney of the named plaintiff for his work allegedly performed in connection with both this and another lawsuit. (*See* Doc. No. 194-3 at 9–16.) Those two suits obviously do not arise out of the same transactional nucleus of facts. Other factors, such as whether the same evidence would be presented and whether the two suits involved infringement of the same rights, similarly do not support a finding that there is an "identity of claims." *See Turtle Island Restoration Network*, 673 F.3d at 917–18.

Class counsel have pointed to several cases they claim establish the applicability of the relitigation exception to this case. *See Golden v. Pacific Maritime Ass'n*, 786 F.2d 1425 (9th Cir. 1986); *In re Linerboard Antitrust Litig.*, 361 Fed. App'x 392 (3d Cir. 2010); *Silcox v. United Trucking Servs., Inc.*, 687 F.2d 848 (6th Cir. 1982); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 4798240 (D.N.J. Dec. 8, 2009); and *In re Nat'l Student Mktg. Litig.*, 655 F. Supp. 659 (D.D.C. 1987). (Doc. No. 194-1 at 22–24.) Only one of the cited cases is of precedential value. In *Golden*, class members had sued class counsel for fraud and malpractice in state court following a class action settlement. 786 F.2d at 1426. In holding that the class members had already had a full and fair opportunity to litigate their claims, the Ninth Circuit noted that these same class members had objected to the settlement and to class counsel's representation at the final approval hearing on the settlement. *Id.* at 1428. The class members filed multiple declarations supporting their argument, and class counsel and other class members filed declarations refuting those arguments. *Id.* Having considered these filings, the district court made specific findings concerning that counsel's competency in its order granting final approval of the settlement. *Id.* The district court subsequently heard further argument on the matter in connection with both a motion for substitution and a motion for reconsideration. *Id*. Unsurprisingly in light of this background, the Ninth Circuit concluded that those class members had "a fair and full opportunity to litigate" the issues raised by them in their action filed in state court. *Id.* at 1429.

In stark contrast, class counsel in this case never advised the court of the possible need to resolve a fee dispute between class counsel and a former attorney for the named plaintiff.

14

Zimmerman was not counsel of record in this case at the time of settlement or subsequent thereto. Indeed, class counsel did not even mention either Zimmerman or the potential dispute to this court, despite having communicated with him about this issue shortly before the final fairness hearing in this action. (*See* Doc. No. 194-2) (including e-mails from June and July 2017 between class counsel and Zimmerman discussing Zimmerman's belief that he was owed compensation for his work). This court was entirely unaware of Zimmerman's claims. Class counsel did not mention Zimmerman and the court did not hear from him prior to issuing its final approval order. Moreover, class counsel never sought to join Zimmerman as a required party under Rule 19, as they could have done had they truly believed any subsequent claims of his would have resulted in a party being subject to inconsistent obligations. *See* Fed. R. Civ. P. 19(a); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (noting that joinder under Rule 19 is required when "the absent party claims a legally protected interest in the action"); *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian Comm. v. California*, 547 F.3d 962, 970–71 (9th Cir. 2008) (discussing mandatory joinder).[7] The decision in *Golden* is thus readily distinguishable from the situation presented here.

The other cases cited by class counsel are similarly distinguishable. In the unpublished decision in *In re Linerboard Antitrust Litigation*, the district court specifically retained

---

[7] It would appear to the court that the obvious reason class counsel did not seek mandatory joinder here is that Zimmerman was not a necessary party to this action because subsequent disputes between attorneys or between attorneys and their clients are regularly addressed separate and apart from the initial underlying case. *See, e.g.*, *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 970 (9th Cir. 2014) (distinguishing between attorneys' fees sought pursuant to federal law and "an attorney-client fee dispute that could be resolved in state court as a breach of contract claim"); *Dryer v. Nat'l Football League*, No. 09-cv-2182 (PAM/FLN), 2016 WL 6609182, at *2 (D. Minn. Nov. 7, 2016) (finding a dispute between co-counsel over attorneys' fees was a "run-of-the-mill contract action" not falling within the "necessary in aid of jurisdiction" exception); *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-CV-00536-JF (LHK), 2015 WL 5027603, at *6 (N.D. Cal. Aug. 25, 2015) (concluding the court lacked jurisdiction over a dispute amongst class counsel regarding how attorneys' fees were to be apportioned). Indeed, it is far from certain that Zimmerman would have even been allowed to intervene in this action had he attempted to do so. *See In re Nucoa Real Margarine Litig.*, No. CV 10-00927 MMM (AJWx), 2012 WL 12854896, at *17–22 (C.D. Cal. June 12, 2012) (noting concerns with allowing discharged counsel to intervene in a class settlement, denying motion to intervene, and suggesting discharged counsel's interests "can be sufficiently protected by filing a separate action seeking fees").

jurisdiction over fee allocation "and any related disputes" following a settlement that yielded an award of approximately $60 million in attorneys' fees. *See* 361 Fed. App'x at 394. Here, the court retained jurisdiction only over "further applications arising out of or in connection with the settlement." (Doc. No. 189 at 24.) Zimmerman was not mentioned in the settlement agreement in this action,[8] was no longer counsel of record at the time settlement was reached and a class was certified, and has brought state claims concerning work allegedly done prior to settlement on this and another case. (*See* Doc. Nos. 108, 171, 194-3.) Zimmerman's claims do not "aris[e] out of or in connection with" the settlement of this case, and are therefore not within the jurisdiction that this court retained in approving the settlement of this action. Moreover, in each of the other cases identified by class counsel, the party filing the state court lawsuit was known to and heard by the federal court during class settlement proceedings in connection with their claim of entitlement to fees. *See Silcox*, 687 F.2d at 849–50, 852 (concluding a dispute between a plaintiff and her attorneys had been "fully litigated" where the defendants paid the settlement money into the court and the court heard from both plaintiff and her counsel prior to ordering its distribution); *Milliron*, 2009 WL 4798240, at *2, *5–6 (noting that the court specifically retained jurisdiction over disputes regarding the fee allocation following settlement, and the attorneys disputing that allocation had appeared before the district court, been heard, and ultimately argued the award was fair and reasonable); *In re Nat'l Student Mktg. Litig.*, 655 F. Supp. at 662–63 (enjoining a state court case filed by executrix of accountant's estate disputing the amount to be paid to the estate following a class action settlement because the accountant had presented evidence to and received an award directly from the federal court).

To summarize, class counsel have not demonstrated that two of the three elements of claim preclusion are met here. Because class counsel cannot meet the elements of claim preclusion, they cannot demonstrate the applicability of the relitigation exception, which is "designed to implement well-recognized concepts of claim and issue preclusion." *Smith*, 564 U.S. at 306; *see also Chick Kam Choo*, 486 U.S. at 147. Therefore, the relitigation exception

---

[8] In contrast, the settlement agreement specifically included an agreement to the appointment of Cordero, Fischbach, and Magolnick as class counsel. (Doc. No. 171 at 6.)

16

provides no basis to enjoin the state court action at issue here.

**CONCLUSION**

The briefing submitted by class counsel in support of their motion to enjoin is thorough and well done. Based upon their performance in this action, the court would expect no less. However, the law does not support the position they have taken as to the issue now before the court. Their dispute with attorney Zimmerman over fees in this and an earlier case is a matter wholly separate from this action as well as the settlement and award of attorneys' fees which this court approved. Accordingly, for all of the reasons set forth above, the motion to enjoin Zimmerman's state court proceeding (Doc. No. 194) is denied. Because the motion itself is denied, the sanctions requested by class counsel against Zimmerman are unwarranted and will also be denied.

IT IS SO ORDERED.

Dated: **January 30, 2018**

UNITED STATES DISTRICT JUDGE