UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAKOTA MEDICAL, INC., individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REHABCARE GROUP, INC., et al.,<br><br>Defendants. | No. 1:14-cv-02081-DAD-BAM<br><br><u>ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF ADDITIONAL CLASS DISTRIBUTIONS</u><br><br>(Doc. No. 215) |

This matter is before the court on plaintiff Dakota Medical, Inc.'s motion for approval of additional class distributions. (Doc. No. 215.) Defendants Cannon & Associates, LLC and RehabCare Group, Inc. each filed statements of non-opposition to the motion. (Doc. Nos. 216, 217.) A hearing on the motion was held on September 5, 2018. Attorneys C. Darryl Cordero and Donald Fischbach appeared telephonically on behalf of plaintiff and the class, and attorneys Steve Crass and David Jordan appeared telephonically on behalf of defendants. At the direction of the court, on September 17, 2018, plaintiff submitted a supplemental declaration of Kenneth Jue, senior project manager for settlement administrator KCC, LLC ("KCC"). (Doc. No. 221.) Having considered the motion, the supplemental declaration of Kenneth Jue, defendants' non-oppositions, and the argument of counsel, the court will grant plaintiff's motion for approval of additional class distributions.

1

| | |
|---|---|
| 1 | On September 21, 2017, the court granted final approval of the class action settlement, |
| 2 | awarded attorneys' fees and incentive payments, and directed distribution of the settlement. |
| 3 | (Doc. No. 189.) Pursuant to the terms of the settlement agreement, the settlement administrator |
| 4 | KCC distributed settlement checks in the total sum of $6,739,088.97 to 12,294 class members. |
| 5 | (Doc. No. 215-2 at ¶ 3.) This distribution occurred in two parts: Distribution 1A ($2,256,563.68) |
| 6 | consisted of 4,823 checks payable to class members who were entitled to receive less than $600 |
| 7 | based on the settlement formula, and to class members who were entitled to receive $600 or more |
| 8 | and had provided valid taxpayer identification numbers ("TIN"). (*Id.*) Distribution 1B |
| 9 | ($4,482,525.29) consisted of 7,471 checks payable to class members that were entitled to receive |
| 10 | $600 or more, but had not provided valid TINs. (*Id.*) In accordance with the final approval order, |
| 11 | these class members were mailed checks in the amount of $599.99, as well as a notice informing |
| 12 | them that their payments were limited because of KCC's failure to receive a valid TIN.[1] (*Id.*) |
| 13 | KCC has reserved the balance of funds due these members for payment this and subsequent |
| 14 | years. (*Id.* at ¶ 6.) |
| 15 | After Distributions 1A and 1B were completed, 1,160 class members provided valid TINs |
| 16 | to KCC. (*Id.* at ¶ 4.) Accordingly, on December 29, 2017, KCC issued an additional 1,160 |
| 17 | checks totaling $1,538,800.29 to these class members, representing the balance of their payments. |
| 18 | (*Id.*) KCC identifies this distribution as Distribution 2A. (*Id.*) |
| 19 | The settlement agreement afforded class members 120 days from the check date in which |
| 20 | to negotiate their settlement checks. (Doc. No. 171 at ¶ 11.A.) From all three previous |
| 21 | distributions, a total of 2,060 checks remain uncashed in the cumulative amount of $1,004,797.29. |
| 22 | (Doc. No. 221 at ¶ 4.) Under the settlement agreement: |

> If any portion of the Members' Payment Amount remains after initial distribution to Settlement Class Members, including but not limited to amounts represented by Uncashed Checks and checks returned as undeliverable by the United States Postal Service, the

---

[1] Plaintiff previously represented to the court that $600 is the threshold that triggers certain reporting requirements with the Internal Revenue Service ("IRS"). (Doc. No. 184 at 3.) In its order granting final approval of the settlement, the court authorized KCC to pay class members who fail to provide valid TIN information annual installments of less than $600 each. (Doc. No. 189 at 11.)

2

> Settlement Administrator shall make a further distribution to Settlement Class Members that timely negotiated checks in the initial distribution, unless the amounts involved are too small to make individual distribution economically viable.

(Doc. No. 171 at 14.) Plaintiff contends that a redistribution of the uncashed amount is economically viable, as the cost of a redistribution was anticipated and included in KCC's original administration budget. (Doc. No. 215-1 at 4 & n.2.) At least 10,234 class members are eligible to participate in the redistribution because they cashed checks in the initial distribution, amounting to an average of approximately $98 per class member. (*Id.* at 4; Doc. No. 221 at ¶ 4.)

Furthermore, there are 6,311 class members[2] who were slated to receive $600 or more but who had not provided valid TINs. (Doc. No. 221 at ¶ 5.) KCC is prepared to distribute additional funds to these members for a projected total distribution of $3,786,536.89. (Doc. No. 215-2 at ¶¶ 7, 9.) To avoid IRS penalties, and to the extent these members' redistribution payments combined with the balance of payments owed these members is $600 or more, KCC will cap these members' payments at $599.99, with the balance to be credited to their settlement shares for distribution after 2018. (*Id.* at ¶ 7.)

Finally, KCC represents that 35 class members cashed one of two checks sent in Distributions 1B and 2A. (Doc. No. 221 at ¶ 6.) Plaintiff recommends that these 35 class members be regarded as having cashed checks in the "initial distribution," thereby qualifying them to participate in the redistribution discussed above. (Doc. No. 215-1 at 5.)

Accordingly, it is hereby ordered that:

1. The settlement administrator shall, no later than 30 days after entry of this order, distribute $3,786,536.89 to 6,311 class members that have failed to provide valid TINs. The amount payable per member shall not exceed $599.99. KCC shall, in addition to other appropriate measures to obtain valid TINs from these class

---

[2] 5,067 of these class members are included in the group of 10,234 members referenced above who are entitled to redistribution of the uncashed checks, because they cashed at least one check in Distributions 1B or 2A. (Doc. No. 221 at ¶ 5.) 1,244 class members are not entitled to redistribution because they did not cash checks in Distributions 1B or 2A, but are still eligible to receive funds on an annual basis, capped at $599.99, pursuant to the final approval order. (*Id.*)

3

members, include a notice with each check in the amount of $599.99 that informs the member that payment was limited because the member failed to provide a valid TIN, and shall include a form for the member to complete to provide that number to KCC. KCC shall pay the balance of funds due each member that provides a valid TIN on or before December 31, 2018;

2. KCC shall, no later than 30 days after entry of this order, distribute $1,004,797.29 to class members that cashed checks in the initial distribution, including 35 class members that cashed checks in either Distribution 1B or 2A. However, if payment to a member that has failed to provide a valid TIN would, when combined with the distributable amount authorized in this paragraph, exceed $599.99, the excess over $599.99 shall be credited to the member's account for distribution after 2018;

3. All checks payable to class members in these distributions shall expire 120 days after mailing, and KCC is authorized to close the account on which the checks are drawn or otherwise take expedient measures to stop payment on the checks 125 days after mailing;

4. The settlement administrator shall pay itself from the common fund the balance it is owed, not to exceed $82,060.36, for the costs of administration of this settlement to date; and

5. Plaintiff shall file a report of the status of the settlement account on or before May 15, 2019.

IT IS SO ORDERED.

Dated: **September 19, 2018**

UNITED STATES DISTRICT JUDGE